You there? Yes, I'm here. Can you see me and hear me? Yes. Ms. Steindorf? Yes, I'm here. Case number 20-2005, United States v. Tan Vang. All right. Welcome, counsel. Mr. Richmond, you may proceed. Thank you, Your Honor. May it please the Court, my name is Robert Richmond. I represent Tan Vang. Mr. Vang was convicted at trial of possessing a firearm in furtherance of a drug trafficking crime. So the burden was on the government to establish, beyond a reasonable doubt, that not only did Mr. Vang possess the gun, but that he did so with the intent to advance or help forward the crime. The law is very clear that possession of a gun in the vicinity of a drug crime is alone not sufficient. Rather, there has to be a factual nexus between the gun and the crime. The evidence here was insufficient. First and foremost, the evidence was clear that Mr. Vang purchased this gun at a Mills Fleet farm four years before the drug conspiracy began. So at the time that he purchased the gun, his initial possession was independent and unrelated to the crime which occurred four years later. And he purchased the a gun through a private sale. By purchasing it from a federally licensed dealer, the gun was registered in his name and was traceable to him. And so the question then becomes whether at the time that the drug offense began, he continued his possession of that gun to further this drug offense or simply because it was one of his possessions which he had had for the four years. As to that, we know that the gun was not possessed near the drugs or the bulk of the proceeds of the crime. There were $1,400 found in the bedroom where the gun was located, but an additional $20,000 in cash and money orders in the basement, two floors down. The marijuana which was being packaged by Mr. Vang's parents was also located two floors down. There was no evidence that Mr. Vang ever possessed the gun during a drug transaction, ever took it with him out of the house, although the gun was in a holster. The evidence was that holster was made to attach to a belt. No belt was seized by the authorities. The evidence was that Mr. Vang steered customers that he was not familiar with away from his house. He did not want to meet strangers at his house. The customers that he dealt with regularly, he had a trusting relationship with. He did not display the gun or use it to intimidate customers, even those who owed him $25,000. The government's expert testified that a drug dealer will display a gun to send the message, don't mess with me. None of that happened in this case. It is not enough for the government to show that a gun could hypothetically facilitate the crime. Mr. Vang has to have intended it to do so. Now, there are many, many cases that affirm the furtherance prong of the statute, but here what we have is nothing more than a theoretical possibility that this gun could have facilitated the offense. The law has never been that a loaded gun in the same house as drugs is enough to establish the in furtherance prong. If this conviction is sustained, it basically reads the in furtherance prong out of the statute. It's our position that the government failed in its proof, and we ask that the court reverse the conviction on count two. With respect to count one, the court made two errors in sentencing. First, Mr. Vang pleaded guilty to the drug conspiracy in count one and stipulated to the fact that he had participated in a drug conspiracy at trial with respect to the gun count. He did not dispute that he possessed the gun. The only issue was, as I've discussed, whether that possession was in furtherance of the drug conspiracy. Yet, despite that, the district court denied him credit for acceptance of responsibility on count one. It's our position that the court misapplied the sentencing guidelines 3E1.1 for acceptance of responsibility by focusing on his going to trial on count two rather than on his acceptance of responsibility on count one. In Watry, this case dealt with a situation like this one where you have an offense that does not group with the others. Here, the gun offense is separate and apart from the guideline analysis. It's a consecutive sentence to be determined independently. In that situation where the defendant accepts responsibility for the counts, notwithstanding the defendant's decision to go to trial on the ungrouped counts. That is exactly what happened here. Now, in Watry, this court reversed the grant of acceptance of responsibility, which I think the district court relied on improperly because the Watry facts are completely different from the facts in this case. In Watry, the defendant denied having possessed the gun, which was found by a police officer at the time of his arrest in his waistband, perjured himself at trial, and then ultimately was convicted. In our case, Mr. Vang admitted possession of the gun, admitted his involvement in the drug conspiracy, pleaded guilty to the drug conspiracy, admitted all relevant conduct. The in furtherance is not relevant conduct for the conspiracy. Only the possession of the gun is relevant conduct. And Mr. Vang went to extraordinary lengths to rehabilitate himself while he was awaiting trial and sentencing. For those reasons, it's our position that the district court misapplied the guidelines by focusing on his having gone to trial on count two, which was separate and apart from count one. Finally, the district court erred in its... Excuse me, before we leave that, you know, Watry starts off by saying that we owe the district court great deference in the decision that they make and that the court gets to make the fact findings about whether or not acceptance is appropriate and that those findings of fact that are necessary, we would review for clear error. The judge went through and it may be that you believe they gave too much deference to Watry, but the court did make some that, uh, uh, you know, uh, what that, uh, why the, uh, uh, acceptance didn't apply. Uh, where did the, where did the district court get its findings wrong? Well, your honor, we don't disagree with any of the facts that were found by the district court. I think this is a legal dispute subject to DeNova review, not a factual dispute. Uh, I mean, obviously we did not dispute that he went to trial, that he contested the in furtherance, but it is a legal error to say that the in furtherance of a gun is part of the relevant conduct of count one. That's not true. That is not a factual issue. The relevant conduct is, did he possess a gun? He admitted that he never contested that he uh, contested, uh, the relevant conduct for the drug offense. Not true. I think that it aired when it said, uh, that I've lost my train of thought, but, uh, that, uh, the government had to prove, uh, the conspiracy in the gun case anyway. First of all, under Watrie, I don't think that's a relevant consideration. Uh, acceptance of responsibility for the two points does not depend on saving the government time at trial on an unrelated count, but in any event, Mr. Vang, uh, stipulated to the, uh, fact of the conspiracy, the government did not have to prove it. There were, uh, three witnesses at trial, one of whom was the expert. The trial lasted a day and a half. So the government certainly did not prove up a conspiracy. So I think that was both a factual error and a legal error, but we see this as a misapplication of 3E1.1 and in that the district court, uh, basically took Watrie to say, rather than looking at the totality of the circumstances in this situation where you go to trial on one count and not on the other, you don't get acceptance of responsibility. I think that was the essence of the district court's holding. With respect to the drug weights, uh, again, uh, there was no dispute about the facts. There was a dispute about the analysis. The district court, uh, found, uh, that based on a CI's, uh, statement that every time he went there, there was 300 pounds of marijuana. The district court said, well, if we take four and a same 300 pounds was the source of the drugs that were being sold, which also added up to a big number. And there was no evidence that the 300 pounds was not the same 300 pounds from the week before. There was no evidence that Mr. Vang each week exhausted his 300 pounds supply and had a fresh 300 pounds supply. Uh, in fact, the evidence was quite to the contrary that when the government tried to set up a controlled by Mr. Vang went for months with no marijuana at all. Uh, we think that the court's analysis yielded an unreliable result and that the appropriate guideline range was with acceptance of responsibility and the drug weight was 63 to 78 months. Uh, with that, I will reserve the remainder of my time for rebuttal. Thank you, Your Honor. All right. Thank you very much. Uh, Mr. Steindorf, you may proceed. Thank you. I'd like to focus largely on the first issue, whether there was sufficient evidence to convict Vang of possession of a firearm in furtherance of his drug trafficking conspiracy. Vang possessed a loaded holstered pistol near drug proceeds and tools of the drug trafficking trade in the same house as hundreds of thousands of dollars worth of marijuana. As the appellant stated, the facts of this case are undisputed. The question is whether drawing all reasonable inferences in favor of the verdict, a jury could find a nexus between the firearm and the drug conspiracy. And a jury may infirm that the firearm was so used when it's kept in close proximity to the drugs, when it's quickly accessible, and when there's expert testimony regarding the use of firearms in connection with drug trafficking, as was the case here. As to the close proximity to the drugs, when police entered the home, they found Vang at the His bed near the top of that landing was also disheveled. And next to his bed in a holster that was designed to be worn inside the waistband was a loaded pistol. It was loaded with one in the chamber. And at the bottom of the stairs, his parents, wearing blue latex gloves, were packaging over 20 moving boxes filled with 294 pounds of marijuana. Now, unlike some of the cases in the Eighth Circuit where the firearm is found in closer proximity to the drugs, this was a huge amount of drugs. It took a U-Haul for law enforcement to transport it from Minnesota back to Iowa for prosecution. And that's in the record at the trial transcript at 162. This was not a pound of meth or an ounce of heroin, which could have been stored in the bedroom along with the gun. And other cases in the Eighth Circuit, such as United States versus Druger, says that the use of firearms to protect proceeds of drug trafficking does violate United States Code 924C. A nexus can exist when a firearm is in proximity to items identified as related to were all the other tools of the drug trafficking trade. $1,400 in cash in a dresser right next to a detailed drug ledger. A second drug ledger was located in a backpack in that room and a money counter was located in the closet. And in addition to the large amount of drugs in the home, again, over $200,000 worth, there was over $20,000 in money orders and cash. Most of it was found in purse, but again, that $1,400 was in Bing's bedroom. Now, Appellant made a big deal of the basement, but I do want to be clear that the record established that this was a split-level home. When you walked in, you walked upstairs to get to the main level and downstairs to get to the basement. So this is not a two-level difference as he's describing. It's a split-level home. As to whether or not this firearm was easily accessible, it was next to him while he was sleeping. It was loaded with one in the chamber, and it was in a holster designed to be worn in the waistband. This evidence combined with the expert testimony that there is a close relationship between drugs and guns, that self-protection and protection of drugs and proceeds is important, given the risk of robberies, that drug dealers often carry guns outside of the home during drug deals for protection, although the firearm can be concealed, and that drug dealers typically keep firearms loaded. Our expert even demonstrated the use of this particular holster, how it is concealed inside of the waistband. Based on the law that, in furtherance, requires defendant possess the firearm with the intent that it advance, assist, or help commit the crime, not that it actually did so, but that he had that intent, a jury could easily find Vang possessed his loaded, holstered, accessible pistol to protect not only the $200,000 worth of marijuana itself, but also proceeds and other tools of possession. I'd like to second address the drug quantity. Appellant has said that he does not dispute any facts. I would bring up that he is correct in his brief at page 38 that the district court believed that the PSR was reporting that there were an additional 25 heat-sealed packages that were available for future packaging. That was incorrect. Those 25 heat-sealed packaging were part of the 294 pounds that were recovered, so there was no additional packaging, but this misunderstanding of the facts was harmless error. 25 pounds of empty packaging doesn't tip the scale either way, and the evidence at clearly showed that defendant was responsible for thousands of pounds of marijuana. The disputed paragraphs in the PSR are paragraph 17, which are trips that one of the co-conspirators, Mason Snyder, took to receive marijuana, paragraph 24, which is the total quantity that was recovered on the date of the search warrant, 296 pounds, and then paragraph 32, which is where cooperating defendant four reports that each time he went to go pick up marijuana, he saw 300 pounds of marijuana in his home. There's really no dispute as to paragraphs 17, the trips that Mason Snyder took, or paragraphs 24, the amount that was recovered at the time of warrant. The real dispute is whether or not the judge erred by finding that, in her words, she only had to find four and a half trips with a total of 300 pounds in order to get to that base offense level of 30. Drug dealers deal drugs to deal drugs. They don't warehouse them, as we know from the evidence that he was dealing, I mean, to Mason Snyder, 540 pounds is what was ultimately scored. Looking at the drug ledgers recovered in this case, it's clear that, first of all, Mason Snyder isn't his only customer. Second of all, I did the math, and just for the period of May to July, actually the drug ledgers show that Mason Snyder got 679 pounds. So there is a vast underestimate that was scored in the PSR, and the judge, in making her conservative estimate, found easily that there were four and a half possessions of 300 pounds of marijuana to get to this base offense level of 30. I'd also note- Did Snyder also testify that he thought that they were moving 200 pounds a week? That's correct. That's in the PSR as well. That was undisputed, and that was at paragraph 17, which corroborates that the estimate was a vast underestimate. Between that information, the fact that law enforcement actually found almost 300 pounds at the time of the warrant, and defendants' extensive drug ledgers, there was more than enough corroborating evidence presented for the judge to make this drug quantity finding. As to acceptance of responsibility, again, appellant is not contesting any facts. I will note the judge, in this particular case, found that timing here was significant. That's something that Vang has kind of glossed over here. His plea to count one was not timely by any stretch. It occurred the Monday before a Thursday trial, and timeliness of defendants' acceptance of under both the one point that the government moves for and the two points that the judge can grant. The judge also did not err in making findings that the government had to prove the conspiracy, largely still to be able to prove that the gun was possessed in furtherance of it. The government's position was that we needed to prove the scale and the scope of the conspiracy to show that the gun was useful for protection. Moreover, possessing the gun is relevant conduct. While Vang argues that he never disputed that he possessed the firearm, the government still has to show, prove by preponderance of the evidence, the nexus to get that in connection with the offense. By contesting the firearm, he is contesting relevant conduct as to count one. If there are no questions, I will rest on my briefing and ask this court to affirm. Very well, thank you. Mr. Richmond, you have about two and a half minutes. You may proceed. Thank you, Your Honor. I agree with counsel that the gun was positioned in a place where it was quickly accessible, but the proof of the pudding is what did he do with that quick accessibility? The police, in this case, in executing the search warrant, broke down the door with a battering ram. For the people inside that house, they had every reason to believe this was a home invasion. The evidence suggested that Mr. Vang was in his bed near the gun. He went running out of the bedroom without the gun and stood in his underwear at the top of the stairs. There is no indication that he had any impulse to grab his gun. So while it was quickly accessible, it was quickly accessible with drugs down in the basement. He was up in the bedroom. There is no evidence that he was acting as security for this operation. The government stresses the fact that this was a large amount of drugs. I do not recall any cases in which this court has relied on the quantity of drugs to prove to establish the in furtherance prong. It is no more in furtherance for one pound of marijuana as a thousand. What we are left with, and we have the fact that Mr. Vang, while the search was being conducted, openly admitted, that's my bedroom, that's my gun. He understood that he was being prosecuted for drugs in the basement, yet he did not think to himself, this gun connects me to the drugs. Because in his own mind, the two were not connected at all. So at some point, if the prongs of the statute are going to have meaning, the government has to prove both possession of the gun and that it was in furtherance of the drug offense. At some point, we have to reach the outer limit. It can't be that possession alone is not enough, but possession with a little conjecture is enough. That is not the law. What we have here is a loaded gun in the same house as some marijuana. That is not sufficient. For those reasons, we ask the court to reverse the conviction on count one and to remand, I'm sorry, on count two and remand for resentencing on count one. Thank you. Thank you, counsel. The case is submitted. Court will render a decision in due course. Counsel, you may stand aside.